**UNITED STATES of America, Plaintiff,**

v.

**GOLDEN ACRES, INC., Defendant.**

**Civ. A. No. 80–73.**

United States District Court,
D. Delaware.

Aug. 26, 1981.

Joseph J. Farnan, Jr., U. S. Atty., and Peggy L. Ableman, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

L. Vincent Ramunno, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action the United States, on behalf of the Secretary of Housing and Urban Development ("the Secretary" or "HUD"), seeks orders of foreclosure on certain real property of which the Secretary is the mortgagee and on chattels in which the Secretary holds a security interest. Now before the Court is the government's motion for summary judgment.

The property at issue is the Golden Acres Apartments, a rental housing project in the Wilmington area operated by the defendant Golden Acres, Inc. ("Golden Acres"). In 1974 Golden Acres executed a commercial mortgage note in the amount of $1,389,100, and conveyed to the lender a mortgage on the apartment project. The mortgage was insured by the Secretary pursuant to section 221 of the National Housing Act, 12

U.S.C. § 1715*l*, a provision designed to assist private industry in providing rental housing to low and moderate income families. The Secretary, by virtue of a series of assignments, has become the owner of the mortgage and of security interests in appliances in the apartments. According to uncontroverted affidavits submitted by the Secretary,[1] Golden Acres failed to make the mortgage payment due on May 1, 1976, at which time the outstanding principal was $1,374,900.70. Thereafter defendant failed to make sufficient payments to bring the loan current. Because of the continued inadequate payments, the Secretary declared the loan in default and accelerated the principal to become immediately payable. Golden Acres has made no payments on the principal balance of $1,374,900.70 since May 1, 1976, and as of September 1, 1980, the unpaid interest amounted to $364,083.91, and there were unpaid service charges of $13,460.73. In addition, the Secretary, in order to prevent a tax foreclosure, had paid over $40,000 in property taxes on the project as of September 1, 1980.

Defendant Golden Acres does not contest the validity of the mortgage nor dispute the Secretary's affidavits detailing the missed payments. Instead, Golden Acres raises several defenses. First, it argues that HUD has no right to foreclose unless it first establishes that such foreclosure would further the policies embodied in the National Housing Act. Second, defendant argues that it received inadequate notice. Third, Golden Acres asserts that an officer of HUD "impliedly agreed" that Golden Acres could use the money intended for the monthly mortgage payments to repair and improve the apartment complex and that HUD is therefore precluded from foreclosing on account of the missed payments.

## I

The government argues that a mortgagor's default, coupled with its statutory authorization to institute foreclosure proceedings,[2] gives it an unequivocal right to a foreclosure decree. The government's position is supported by several cases which seem to state that the Secretary's decision to foreclose is not subject to challenge by a defaulting mortgagor. *See United States v. Sylacauga Properties, Inc.*, 323 F.2d 487, 491 (5th Cir. 1963); *United States v. Woodland Terrace, Inc.*, 293 F.2d 505, 507 (4th Cir.), *cert. denied*, 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961). More recently, however, courts have questioned whether the Secretary has unbridled discretion to institute foreclosure proceedings. In *Kent Farm Co. v. Hills*, 417 F.Supp. 297 (D.D.C. 1976), Judge Gesell preliminarily enjoined institution of foreclosure proceedings because HUD failed to present any "reasoned analysis" of a decision to foreclose which appeared to be at variance with a prevailing HUD policy of not foreclosing on certain classes of HUD held mortgages. The court reasoned that HUD was "required to apply this policy in a reasoned, nonarbitrary manner that is consistent with the underlying Congressional intent." 417 F.Supp. at 301. The *Kent Farm* opinion, using broad language, stated:

> HUD is not simply a banker. Before it acts because of default on a project clearly otherwise meeting housing objectives it must consider national housing policy and decide what further steps authorized by Congress it will take to assure continuity of the decent, safe, sanitary, low-cost housing then being provided.

*Id.* In *United States v. American National Bank and Trust Co.*, 443 F.Supp. 167 (N.D. Ill.1977), the court followed the decision in *Kent Farm*, holding that HUD's statutory authority to foreclose "is tempered by and subservient to HUD's overall responsibilities under the Act to further national housing policy." 443 F.Supp. at 175. The court therefore concluded that the defaulting mortgagor's counterclaim, which alleged

---

1. *See* Doc. No. 10 (Affidavit of Harold Donahey); Doc. No. 12 (Affida/it of B. C. Tyner); Doc. No. 16 (Affidavit of Richard D. Goldsborough, Jr.).

2. The Secretary is authorized by 12 U.S.C. §§ 1713(k) and 1715*l*(g)(4) to foreclose on federally insured mortgages that have been assigned to him.

that HUD failed to adhere to its duty to consider statutorily authorized alternative financing terms that would avoid foreclosure, stated a claim sufficient to survive a motion for summary judgment on a record that only established the mortgagor's default. *Id.*

The Seventh Circuit recently faced the issue, and reversed a district court ruling that a HUD decision to foreclose is not subject to judicial review. *United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980).[3] Although agreeing that a decision to foreclose is in large part committed to agency discretion, the court held that the Secretary's discretion is not unlimited. Rather, a decision to foreclose "may be reviewed to determine whether it is consistent with national housing objectives." *Id.* at 1035. The court then determined that foreclosure decisions should be reviewed under the standard laid out in 5 U.S.C. § 706(2)(A), *viz.*, whether that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." The court nonetheless emphasized that HUD's discretion is at its greatest when foreclosing on a mortgage granted by a large commercial developer "because large commercial developers presumably possess the resources and sophistication to make agreements they will be able to live with ... and because the National Housing Act was primarily intended to benefit individuals who live in inadequate housing, not commercial developers...." *Id.* at 1035–36. In view of the broad discretion granted HUD in deciding whether to foreclose, the court in *Winthrop Towers* determined that "it should not be required to introduce evidence of procedural regularity when it files suit to foreclose. Rather the mortgagor resisting foreclosure should bear the initial burden of introducing some evidence of

HUD's arbitrary or capricious action, abuse of discretion or failure to comply with applicable law." *Id.* at 1036.

■ Review of HUD foreclosure decisions, as with other agency action, is governed by the Administrative Procedure Act ("APA"). Judicial review is available under the APA unless such review is precluded by statute, or the agency action in question is "committed to agency discretion by law." 5 U.S.C. § 701(a). As there is no statutory preclusion of review of foreclosure decisions, the threshold question is whether a foreclosure decision is committed by law to agency discretion. The Supreme Court has stated that the provision prohibiting review of discretionary decisions "is a very narrow exception" which "is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971), *quoting*, S.Rep.No.752, 79th Cong., 1st Sess. 26 (1945). In addressing this exception to the normal right to judicial review, the Third Circuit Court of Appeals has indicated that the substance of agency decisions made pursuant to a broad grant of discretion, which are the product of political, economic or managerial choices, and which are based upon an agency's special knowledge or expertise, are ordinarily not subject to judicial review. *See Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574, 578–80 (3d Cir. 1979).[4] Consideration of these factors compels the conclusion that foreclosure decisions should for the most part be free from judicial review. A decision to foreclose is in essence a business decision in an area in which there are no significant statutory or regulatory guidelines, save HUD's obligation to promote national housing objectives.[5] In mak-

---

**3.** The district court held there was " 'no law to apply' " and that therefore "the Secretary's decision to foreclose is one that is committed by law to agency discretion." *United States v. Winthrop Towers*, 475 F.Supp. 320, 321 (N.D. Ill.1979).

**4.** In *Local 2855* the Court considered its power to review a decision by the Department of the

Army to contract out to a private concern stevedoring and terminal services previously performed by government employees.

**5.** 42 U.S.C. § 1441 states in pertinent part: The Department of Housing and Urban Development, and any other departments or

ing such a decision HUD must weigh a variety of factors in deciding whether to foreclose, including consideration of whether national housing policy would best be served by using foreclosure to preserve the assets of the federal housing insurance fund,[6] rather than by taking yet further steps to keep in business a defaulting enterprise. In determining whether to foreclose HUD must also call upon its experience and expertise in insuring property and holding mortgages. In short, it is for HUD to choose among rational alternatives that may further national housing policy, and judicial review is ordinarily inappropriate to consider whether a foreclosure decision arrived at through the considered judgment of HUD was necessarily the best or most effective choice.[7]

■ I do not, however, conclude that a foreclosure decision is completely immune from judicial review. As the Third Circuit Court of Appeals observed in *Local 2855*, a court may review a decision committed to agency discretion when there are "charges that the agency lacked jurisdiction, that the agency's decision was occasioned by imper-

missible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command." 602 F.2d at 580. The mortgagor, however, has the initial burden of coming forward with some evidence of irregularity in the decision-making process. *Cf. Winthrop Towers, supra.* This evidentiary allocation achieves a fair balancing of HUD's right to foreclose, the developer's right to fair treatment, and the public's interest in furthering the objectives of the National Housing Act. Because foreclosure may minimize government losses and thereby preserve assets which make up the housing insurance fund, HUD has a strong interest in moving quickly in appropriate cases. To permit defaulting mortgagors to stall the foreclosure process as a matter of course could frustrate this interest.

■ In this case Golden Acres has simply filed an affidavit by its Secretary-Treasurer that the project has an occupancy rate in excess of 90% and that it provides tenants with "adequate, safe and sanitary quar-

agencies of the Federal Government having powers, functions, or duties with respect to housing, shall exercise their powers, functions, and duties under this or any other law, consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the national housing objective hereby.established, and in such manner as will encourage and assist (1) the production of housing of sound standards of design, construction, livability, and size for adequate family life; (2) the reduction of the costs of housing without sacrifice of such sound standards; (3) the use of new designs, materials, techniques, and methods in residential construction, the use of standardized dimensions and methods of assembly of home-building materials and equipment, and the increase of efficiency in residential construction and maintenance; (4) the development of well-planned, integrated, residential neighborhoods and the development and redevelopment of communities; and (5) the stabilization of the housing industry at a high annual volume of residential construction.

6. *See United States v. Winthrop Towers, supra,* 628 F.2d at 1036; *United States v. Sylacauga Properties, Inc., supra,* 323 F.2d at 492.

In *Winthrop Towers* the court made the following observation about the fundamentally business nature of many foreclosure decisions (628 F.2d at 1036):

The decision to foreclose a mortgage is fundamentally of a business and administrative nature, requiring the exercise of HUD's business and administrative judgment. HUD may certainly give major consideration to preservation of the assets of the insurance fund and may weigh other factors relevant to national housing policy in formulating administrative procedures and in deciding whether to foreclose a particular mortgage.

7. In a different context, the Third Circuit agreed that "HUD has broad discretion to choose between alternative methods of achieving the national housing objectives set forth in the several applicable statutes." *Shannon v. United States Dept. of Housing & Urban Development,* 436 F.2d 809, 819 (3d Cir. 1970). In *Shannon* the court held that HUD's discretion in approving federal insurance of, and rent supplement for, a rental housing project was constrained by the requirement that it consider what impact a particular project would have on racial concentrations in housing. *Id.* at 822.

ters."[8] These assertions are inadequate to create a material issue of fact as to whether the Secretary acted outside his scope of discretion in moving to foreclose. Indeed, the record indicates that HUD, to no avail, made substantial efforts to arrange a "work-out arrangement" with the mortgagor that would have avoided foreclosure, and went so far as to pay the accrued real estate taxes ignored by Golden Acres.[9] On this record it is fair to assume that the Secretary determined that foreclosure would further national housing objectives by minimizing the loss of funds that would otherwise be available to insure other projects. This is of special force where there is no showing of record that foreclosure would result in displacement of the tenants.

## II

■ Golden Acres next asserts lack of proper notice—it does not specify notice of what—as a defense to foreclosure. The Court assumes the argument to be that the government was obligated to give notice of its intention to accelerate the loan and then to foreclose. This claim is frivolous. The mortgage expressly provides that in the event of a default in the making of any monthly payment which is not made good by the due date of the next installment "the whole amount of principal and interest remaining unpaid at that time shall at once become due and payable without notice at the option of the Mortgagee."[10] Golden Acres has not alleged any facts which would support a legal argument that this term should not apply to it. In any event, the record reveals repeated efforts by HUD to work out alternative financing arrangements, all to no avail.[11] Thus Golden Acres was as a practical matter put on notice that foreclosure would be forthcoming if financing arrangements satisfactory to HUD could not be worked out.

## III

A court may grant summary judgment only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In addition, all inferences drawn from these evidentiary sources must be made in favor of the party opposing the motion. *See, e. g., Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir. 1980).

The Secretary has introduced by affidavit evidence that Golden Acres has been in arrears on its mortgage payments since May 1976. These uncontroverted facts would ordinarily establish a default which would entitle the Secretary to exercise the mortgagor's traditional remedy of foreclosure. Golden Acres, however, argues that it has a defense to foreclosure proceedings, asserting the existence of an "implied agreement," which excused it from making the monthly mortgage payments. The only evidentiary support submitted by Golden Acres relating to this alleged implied agreement is in the form of an affidavit by Mario Capano, Secretary-Treasurer of Golden Acres,[12] which states in pertinent part:

> Mr. R. D. Goldsborough, Jr., the Director of HUD for its Wilmington office, and myself, acting as agent/officer of Golden Acres, Inc. impliedly agreed that in lieu of making monthly mortgage payments the money could be used to repair and improve the apartment complex, which was in bad need of repair, and we could not financially do both. That the main improvement was to convert the electric heat to a more efficient and useful heating system which we felt was the main reason for the low occupancy rate. Be-

---

8. *See* Affidavit of Mario Capano, Exhibit A to Golden Acres' Answering Brief in Opposition to the United States' Motion for Summary Judgment (Doc. No. 15).

9. *See* Exhibits to the Affidavit of Harold Donahey (Doc. No. 10).

10. The Mortgage is appended to the Complaint (Doc. No. 1) as Exhibit B.

11. *Id.* note 9.

12. Exhibit A to Doc. No. 15.

cause of the new heating system and other repairs we have achieved over a 90% occupancy rate and provide the tenants with an adequate, safe and sanitary quarters. Mr. R. D. Goldsborough, Jr., then informed us that since we used the money to make the repairs he had obtained the verbal agreement of his superiors in Washington, but before the approval could be finalized, that individual died. Capano then asserts that Golden Acres "has approximately expended $320,000.00 to improve and maintain the premises in reliance on the implied agreement with Mr. Goldsborough." [13]

■ The government strenuously contests the existence of any such agreement and has submitted the affidavit of Richard Goldsborough denying that any such agreement was made. However, because this matter is before the Court on a motion for summary judgment, the Court cannot decide questions of credibility. Rather, the Court must determine whether the Capano affidavit raises any material issues of fact which precludes granting the summary judgment to which the government would otherwise be entitled. Although Golden Acres' pleadings do not make clear whether it contends that this "implied agreement" is a binding contract, or that Goldsborough's actions create an estoppel which bars foreclosure, it is sufficient for present purposes to recognize that parties to a mortgage may make enforceable agreements modifying the terms of payment and that in some circumstances a mortgagee's conduct may create an estoppel which bars foreclosure.[14] The Court's inquiry at this stage is limited to whether Capano's affidavit shows that there is a material issue of fact regarding the existence of such an agreement or estoppel. For the reasons explained below, the Court concludes that there is no material issue of fact and that the Secretary is therefore entitled to summary judgment.

■ When one party submits evidentiary materials which, if accepted as true, would entitle him to summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Although the burden of showing the right to summary judgment remains on the moving party, an opposing party cannot successfully defeat a summary judgment motion simply by making bare denials or allegations of affirmative defenses. It is established that "legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." *SEC v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980); *see, e. g., Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604, 607–08 (3d Cir. 1979); *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978); *Kung v. FOM Investment Corp.*, 563 F.2d 1316, 1317–18 (9th Cir. 1977). Instead, "if the movant makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers some competent evidence that could be presented at trial showing that there is a genuine issue as to a material fact." 10 Wright & Miller, Federal Practice and Procedure § 2727 at 536–37 (1973). This Golden Acres has failed to do.

■ The Capano affidavit is inadequate because it makes the conclusory statement that Capano and Goldsborough "impliedly agreed" that Golden Acres could direct its monthly mortgage payments toward repairs and improvements without providing the "specific facts" required by Rule 56. The affidavit does not state when or where this agreement was made, what its exact terms were, whether it was written or oral, or from what statements or actions this agreement was implied. Whether or not there was an enforceable "implied agreement" is an issue that must be resolved by the court;

---

**13.** By way of counterclaim, Golden Acres asks that the mortgage "be reformed and amended to reflect the parties agreement, implied or express, so as to allow the Defendant to resume monthly installments." Defendant's Answer ¶ 8. (Doc. No. 5).

**14.** *See, e. g.*, 55 Am.Jur.2d *Mortgages* § 559 (1971 & Supp.1981).

an allegation that such an agreement exists is not evidence. Quite simply, Golden Acres has not by affidavits or otherwise laid out its version of the facts which it says would create the alleged "implied agreement." Similarly, if Golden Acres is proceeding on a theory of estoppel, it has not specified what the facts are which create an estoppel. If Golden Acres had asserted *facts* which would support the legal conclusion that there was an enforceable agreement or an estoppel, then the Court would be obliged to accept those facts as true and summary judgment might be precluded.[15] Because Golden Acres has chosen not to present its version of the facts, after having had fair opportunity to do so, it is appropriate to grant the motion of the United States for summary judgment against defendant.

---

**15.** The government contends that Golden Acres' allegation of an "implied agreement" between it and Goldsborough is immaterial because Goldsborough was not authorized to enter into any such agreement on behalf of the Secretary, and the United States cannot be estopped or otherwise bound by the unauthorized acts of its agents. Traditionally the government could not in any way be bound by the unauthorized acts of its employees, the rule being that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). The doctrine has, however, recently been subject to reexamination by the courts, a number of which have held that there are certain circumstances in which the doctrine of equitable estoppel may be invoked against the United States. *See, e. g., United States v. Ruby Co.*, 588 F.2d 697, 701–03 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Texas Oil & Gas Corp. v. Andrus*, 498 F.Supp. 668, 676–77 (D.D.C.1980); *Santos v. Franklin*, 493 F.Supp. 847, 852–56 (E.D.Pa.1980). *See generally* Note, *Equitable Estoppel of the Government*, 79 Colum.L.Rev. 551 (1979). Since Golden Acres has not set forth the facts which would create an estoppel, the Court deems it unnecessary to consider whether an estoppel could operate against the United States in a commercial transaction of the type presented here.