UNITED STATES of America, Plaintiff,

v.

GOLDEN ACRES, INC., J.L. Capano,
Inc., Joseph L. Capano, and Mario
B. Capano, Defendants.

Civ. A. No. 85–179–JRR.

United States District Court,
D. Delaware.

April 15, 1988.

William C. Carpenter, Jr., U.S. Atty., and Charlene D. Davis, Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, Del., for plaintiff; John R. Bolton, Asst. Atty. Gen., J. Christopher Kohn, Robert M. Hollis and Gregory A. Harrison, U.S. Dept. of Justice, Washington, D.C., and Patricia G. Beatley, Dept. of Housing & Urban Development, Washington, D.C., of counsel.

L. Vincent Ramunno, of Ramunno & Ramunno, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

ROTH, District Judge.

The United States of America, representing the interests of the Department of Housing and Urban Development (HUD), filed this suit against defendants J.L. Capano, Inc., Joseph L. Capano, Mario B. Capano (The Capanos) and Golden Acres, Inc. on March 21, 1985. The Amended Complaint charges that defendant Golden Acres breached its Regulatory Agreement with HUD; that the payments in violation of the Regulatory Agreement should have been held in trust for plaintiff; that defendants violated the Federal Priority Statute, 31 U.S.C. § 3713; that the Capanos should be deemed constructive trustees of the moneys distributed in violation of the Regulatory Agreement; and that the Capanos should be liable under the alter ego theory for payments made by Golden Acres in violation of the Regulatory Agreement. Default was entered against Golden Acres on August 13, 1985. On February 4, 1988, plaintiff moved for summary judgment in its favor on all counts and for default judgment against Golden Acres for breach of the Regulatory Agreement and violation of the Priority Statute. The Capanos moved for summary judgment in their favor on February 9, 1988, although no grounds therefor are stated in the motion or in their Opening Brief, filed on March 4, 1988. On April 5 plaintiff filed a motion to strike defendants' jury demand and on April 7 the Capanos filed a motion for leave to file responses to plaintiff's Request for Admissions. Trial is scheduled to begin on April 18, 1988.

The pending motions were considered at the Pretrial Conference held on April 11, 1988. For the reasons expressed by the Court at that time and as set out now in this Memorandum Opinion, plaintiff's motion for summary judgment against the Capanos for violation of the Priority Statute is granted; the Capanos' motions for summary judgment and for leave to file responses to plaintiff's Request for Admissions are denied; plaintiff's request to strike the jury demand is granted. Defendants' motion to recuse is denied for the reasons stated at the Pretrial Conference. Decision on the remaining motions will be made at trial.

## I. DEFENDANTS' MOTION FOR LEAVE TO FILE RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS.

■ Before reciting the facts in this case, we address defendants' Motion to Withdraw Certain Admissions. On July 13, 1987, the United States served "Plaintiff's First Request For Admissions." This request asked defendants to admit, *inter alia*, that the "value of the assets of Golden Acres, Inc. was less than the liabilities of Golden Acres, Inc. for the period" of each calendar year from 1976 through 1981. Appendix of the United States in Support of Motion for Summary Judgment, D.I. 68A, at 84 (hereinafter "App."). Defendants did not respond to the request. Accordingly, under F.R.C.P. 36(a), these matters were admitted for purposes of this action. Plaintiff noted its reliance on these admissions in its Brief in Support of Motion for Summary Judgment filed February 4, 1988. D.I. 68 at 7, n. 3. The defendants did not object to the use of these admissions in its Brief in opposition to Plaintiff's Motion for Summary Judgment, filed March 4. D.I. 72. Plaintiff again relied on the admitted facts in its Reply Brief, filed March 24. Only on April 7, eight months after the requests were filed, two months after defendants realized plaintiff had relied upon the admissions in its motion for summary judgment, and eleven days prior

to trial, did defendants file their Rule 36(b) motion. D.I. 84.

Rule 36(b) of the Federal Rules of Civil Procedure provides that "the Court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the Court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." As Judge Muir recently observed:

> It is clear from the language of Rule 36(b) that the Court has substantial discretion in deciding whether to allow withdrawal of an admission. While the Rule establishes two prerequisites to *permitting* withdrawal of an admission, it says nothing about disallowing withdrawal of an admission.

*Kleckner v. Glover Trucking Corp.,* 103 F.R.D. 553, 557 (M.D.Pa.1984). Disallowing withdrawal may be required if Rule 36 is to be effective to narrow issues and speed the resolution of claims. *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2nd Cir.1983).

If we examine the facts of record in the present case, it becomes evident that we should not permit withdrawal of the admissions in this case. The request for admissions was filed two years after this action was commenced, at a time when the material facts had been well developed through discovery both in this action and in related cases.[1] The Capanos' attorney acknowledged at the Pretrial Conference that, when he received the Request for Admission, he telephoned his clients to discuss the responses to be made. He described the contents of the requests, although he may have used words to the effect that the desired admission was that Golden Acres

had been "insolvent" for the years in question rather than that "the value of the assets of Golden Acres was less than the liabilities" for those years. The Capanos indicated to their attorney that admission of the described facts was appropriate. Their attorney then deliberately refrained from filing a response to avoid an excess accumulation of unnecessary paper. This was because he was aware that failure to respond would constitute an admission.

When, however, the Motion for Leave to File Responses to Plaintiff's Request for Admissions, was filed on April 7, 1998, the attorney for the Capanos represented that,

> Defendants did not file a Response to Request for Admissions because they misunderstood the meaning of "insolvency" and believed that it meant not being able to keep their obligations current and not that the value of the assets were less than the liabilities since as Mario Capano stated in his Affidavit [executed on March 2, 1988, and filed with defendants' brief in opposition to summary judgment on March 4, 1988] at all times the value of the assets exceded [sic] the liabilities. If they had understood what was meant by "insolvency" they would have [had] their attorney deny the Request for Admissions Nos. one thru six.[2]

We find little reason to exercise our discretion under Rule 36(b) in favor of defendants. Defendants' delay in responding to the request for admission is measured in months, not days. *Cf. United States v. Cannon,* 363 F.Supp. 1045, 1048–49 (D.Del. 1973) (ten day delay excused). Granting the motion here could well delay trial. *Herrin v. Blackman,* 89 F.R.D. 622, 624 (W.D.Tenn.1981) (delay of trial a factor in a Rule 36(b) decision). Moreover, we find

---

1. *U.S. v. Capano,* 786 F.2d 122 (3d Cir.1986); *U.S. v. Golden Acres,* 520 F.Supp. 1073 (D.Del. 1981).

2. The affidavit of Mario Capano stated in pertinent part:

> 4. THAT due to his experience and knowledge of building, development, real estate and its values, he is and was aware of the fair market value of the Golden Acres Apartments during the time periods relevant to this proceeding and that the fair market value of the

Golden Acres Apartments and Golden Acres, Inc. was substantially higher than that alleged by the government and was approximately equal to if not in excess of the liabilities of Golden Acres, Inc. and the Golden Acres Apartments.

Plaintiff has a presently pending motion to strike paragraphs 4 through 8 of the Capano affidavit for failure to comply with Fed.R.Civ.P. 56(e).

permitting withdrawal would prejudice the plaintiff. The government relied on these admissions in writing its briefs and in preparing for trial. To permit their withdrawal on the eve of trial would unfairly disrupt the government's preparations for trial and the orderly procedures of this Court. Rule 36(b) thus directs us to rule against the defendants.

Moreover, even if we allowed the withdrawal of the admissions, the record in this case indicates strongly that the facts in question, if plaintiff were put to the test to prove them, would be easily proved. The only balance sheets for Golden Acres that are of record are those for the years 1975–78. Each of these years shows liabilities in excess of assets (App. 31, 38, 55, 62) and expenses in excess of income (App. 32, 39, 56, 63). In addition, at his deposition, Mario Capano was asked:

Q. Do you remember a time when you were involved with Golden Acres, Inc., at any time where, at the end of the year there was any net income that— there was more income than expenses for a year?

A. Well—

MR. RAMUNNO: Are you talking about before we took out—is it repayment of his loan or after—

BY MR. HARRISON:

Q. No. Including, tossing it all together in a bag, do you ever remember a time where there was a net income, that there was more income than expenses for a year?

A. Well, there couldn't have been, because it was always in debt and in default of debt.

Beyond the request for admissions, the insolvency of Golden Acres is documented and the statements to the contrary are no more than conclusory. Accordingly, we will deny defendants' Motion and will employ these admissions in the statement of facts below.

## II. FACTS.

In March, 1972, P. Donald Woodall hired Joseph L. Capano to construct an 88 unit apartment project located in New Castle County. App. at 74. The project was named Golden Acres. It was owned by Golden Acres, Inc., a Delaware corporation. In turn, Mr. Woodall and his wife owned all the outstanding Golden Acres stock. App. 143–44. On March 28, 1974, Golden Acres executed and delivered to the Central Mortgage Company a Mortgage Note for $1,389,100. App. at 15–17. The Mortgage Note was secured by a mortgage encumbering the project. App. at 9–14. Concurrently, HUD insured repayment of the Mortgage Note pursuant to the National Housing Act, 12 U.S.C. § 1715*l*(d)(4). In consideration for the insurance, Golden Acres signed a Regulatory Agreement with HUD. App. at 1–8. The Regulatory Agreement and mortgage were duly and properly recorded.

The mortgage proceeds fell short of the total construction costs. Accordingly, on the same day the mortgage and Regulatory Agreement were executed, the Woodalls personally executed a promissory note and memorandum of agreement with and to J.L. Capano, Inc. for $234,000. App. at 18–21. Under the terms of these documents, the Woodalls had until December 30, 1974 to pay J.L. Capano, Inc. If the Woodalls failed to pay off the note by that date, they had to surrender all their capital stock in Golden Acres to J.L. Capano, Inc.

The Woodalls failed to meet their obligation. App. at 22. On January 7, 1975, J.L. Capano, Inc. took control of all Golden Acres stock. App. at 43–44. The Woodalls resigned as officers of Golden Acres, to be replaced by Joseph L. Capano and Mario B. Capano, who became sole officers and directors of the corporation. App. at 43–44, 85. Mario B. Capano assumed control of corporate finances, including the payment of creditors. App. at 149–50. From this time until December 8, 1981, J.L. Capano, Inc. owned 100 percent of Golden Acres stock. App. at 85. In turn, Mario B. Capano and Joseph L. Capano each owned 50 percent of the stock in J.L. Capano, Inc. and were its sole officers, directors, and shareholders. *Id.*

When the Capanos obtained the Golden Acres stock, they did not consider their

debt satisfied. App. at 145–146. Rather, they viewed ownership of Golden Acres as a means to regain the $234,000 which the Woodalls had failed to pay them. *Id.* In defendants' opinion, they "had obtained the stock of Golden Acre [sic], Inc. solely and exclusively to try to recoup what they were owed." Defendants' Answering Brief at 5. This object was "their primary goal," despite their knowledge of the outstanding mortgage debt Golden Acres owed to HUD. App. at 6, 85, 147. Mario Capano perceived himself to be "a senior creditor to HUD." App. at 155.

Unfortunately, the Capanos could not "repay" themselves out of Golden Acres' profits. There were no profits. To the contrary, end of the year balance sheets reveal the following:

| YEAR | TOTAL ASSETS | TOTAL LIABILITIES | DIFFERENCE | SOURCE |
|---|---|---|---|---|
| 1975 | 1,375,521 | 1,402,225 | (26,704) | (App. at 31) |
| 1976 | 1,351,403 | 1,409,536 | (58,133) | (App. at 38) |
| 1977 | 1,425,877 | 1,641,806 | (215,929) | (App. at 55) |
| 1978 | 1,401,440 | 1,663,719 | (262,279) | (App. at 62) |

While no records after 1978 have been introduced, defendants have admitted that the value of the assets of Golden Acres was less than the value of its liabilities for the years 1976 to 1981 inclusive. See Part I, *supra;* App. at 84.

On May 1, 1976, Golden Acres failed to make the mortgage payment then due. *United States v. Golden Acres, Inc.,* 520 F.Supp. 1073, 1075 (D.Del.1981). Subsequently, Golden Acres failed to bring the loan current. *Id.* On September 29, 1976, HUD, pursuant to its role as insurer, was assigned the Mortgage Note and Mortgage. App. at 24–25.

Despite the mounting losses and mortgage default of Golden Acres, the Capanos steadfastly maintained their goal of recovering the money the Woodalls had failed to pay them. Between October 1, 1976 and December 31, 1981, Golden Acres issued 129 checks and thereby disbursed $466,760.54 to Mario B. Capano, Joseph L. Capano, J.L. Capano, Inc., J.L. Capano Buildings, Inc., and other companies the Capanos owned or controlled. App. at 99–138. These payments were intended by the defendants to pay the $234,000 principal debt the Capanos believed Golden Acres owed them. App. at 74–76.

At various times between the fall of 1976 and spring of 1979, the Capanos and HUD discussed workout plans for the defaulted mortgage. App. at 43–47, 70, 78. These negotiations ultimately proved futile. App. at 78. Fearing HUD foreclosure was imminent, the Capanos continued their program of "debt" repayment. *Id.* On June 25, 1979, HUD declared the Mortgage Note in default and accelerated the principal to become immediately due and payable. App. at 70. HUD initiated foreclosure proceedings on February 19, 1980, and on August 26, 1981, this Court granted orders of foreclosure. *Golden Acres,* 520 F.Supp. 1073. On March 3, 1982, HUD purchased the apartment project at a public, judicial foreclosure sale for $1,300,000, far short of the then $2,006,020.46 debt Golden Acres owed HUD. App. at 71, 180. This Court confirmed the sale on March 15, 1982. App. at 72–73.

## III. STANDARD OF REVIEW.

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law," then the court may render summary judgment. As the Supreme Court has recently ruled, "this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict, if under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty*

*Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## IV. THE FEDERAL PRIORITY STATUTE.

■ The Federal Priority Statute, a law which, in various forms, has been in effect for nearly all of our nation's history, currently reads:

§ 3713. Priority of Government claims. (a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed ...

(2) This subsection does not apply to a case under title 11.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713 (1982) (previously codified at 31 U.S.C. §§ 191, 192 (1976)). See *United ed States v. Moore*, 423 U.S. 77, 80–81, 96 S.Ct. 310, 312–13, 46 L.Ed.2d 219 (discussing history of statute). The statute can be straightforwardly applied to the facts of this litigation.

First, Golden Acres was "a person indebted to the Government." 31 U.S.C. § 3713(a)(1)(A). The debt arose on September 19, 1976 when HUD was assigned the mortgage. From the date of the assignment, Golden Acres owed its mortgage debt directly to the United States.

Second, Golden Acres was "insolvent" from January 1, 1976 to December 31, 1981. 31 U.S.C. § 3713(a)(1)(A). Under the Federal Priority Statute, a debtor is insolvent when its liabilities exceed its assets. *Lakeshore Apartments, Inc. v. United States*, 351 F.2d 349, 353 (9th Cir. 1965); *United States v. Coyne*, 540 F.Supp. 175, 179 (D.D.C.1981); *United States v. Dyna–Tex, Inc.*, 372 F.Supp. 280, 281 (E.D. Tenn.1973); *see also United States v. Sullivan*, 214 F.Supp. 701, 702 (W.D.Pa.1963) (insolvency when corporation "had total liabilities greater than its total assets and further could not meet its then current liabilities out of its current income"). The defendants have admitted that the value of the assets of Golden Acres was less than its liabilities for each of the years 1976–1981, inclusive. See Part I, *supra;* App. at 84. The available financial statements for Golden Acres confirm the corporation's ill health. The balance sheet dated December 31, 1978, the last available statement, indicates liabilities exceeded assets by $262,279. App. at 62. Mario B. Capano also has recognized that Golden Acres never had any net income and was always in debt or default. App. at 177–78.

Third, Golden Acres committed three independent "acts of bankruptcy." 31 U.S.C. § 3713(a)(1)(A)(iii). The term "act of bankruptcy" still refers to the statutory definition contained in the Bankruptcy Act of 1898, former 11 U.S.C. § 21(a) (1976), even though the Bankruptcy Reform Act of 1978 generally supersedes the 1898 Act. *United ed States v. Vertac Chemical Corp.*, 671 F.Supp. 595, 621–22 (E.D.Ark.1987) (employing 1898 Act definitions to apply § 3713); *see also Moore*, 423 U.S. at 83–84, 96 S.Ct. at 314 (1975) (reading provisions of several past Bankruptcy Acts to interpret § 3713's antecedent).

Golden Acres committed an act of Bankruptcy when it made a preferential transfer of its assets. 11 U.S.C. § 21(a)(2) (1976) (repealed 1978). See *Lakeshore Apartments*, 351 F.2d at 353; *United States v. Whitney*, 654 F.2d 607, 610 (9th Cir.1981). A preferential transfer is a "transfer ... of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent."[3] Golden

---

**3.** The further statutory requirement that the transfer be "within four months before the filing by or against him" of a petition in bankruptcy does not apply to Federal Priority Statute

Acres transferred $466,760.54 to its "creditors," the Capanos, for an "antecedent debt," the $234,000 allegedly due the Capanos, and suffered this transfer while it was insolvent. "[P]ayment at a time when the debtor was insolvent necessarily favored those payees at the expense of other creditors." *Lakeshore Apartments*, 351 F.2d at 353. Accepting, *arguendo*, that the $466,760.54 discharged debt was legitimately due, the illegality of the disbursement remains. *Id.* Under the Federal Priority Statute, the United States had the right to be paid *first;* all other creditors were subordinate.

Golden Acres committed a second act of bankruptcy when it conveyed property with the intent to "hinder, delay, or defraud" any creditor, a fraudulent conveyance. 11 U.S.C. § 21(a)(1) (1976) (repealed 1978). *See also* 11 U.S.C. § 548(a)(1) (1984). *See In re Gottheiner*, 3 B.R. 404, 408–9 (Bankr. N.D.Cal.1980), *aff'd* 703 F.2d 1136 (9th Cir. 1983). In paying $466,760.54 to Capano interests, Golden Acres certainly "hindered," at the least, the effort of the United States to collect its debt. Mario Capano perceived himself to be in competition with the United States for the payment of Golden Acres' debt, and intended that he be paid first as "senior creditor." App. at 155–157, 170, 172–73. However, supposing the Capanos and the United States were in such a competition, the Federal Priority Statute pre-ordained that the government win. Golden Acres' payments to Capano interests disregarded the priority rights of the United States and hindered the United States' efforts to collect its due debt.

Golden Acres committed a third act of bankruptcy when it conveyed property without receiving "fair" consideration, a fraudulent conveyance. 11 U.S.C. § 21(a)(1) (1976) (repealed 1978) *referring to id.* at § 107(d); *see also* 11 U.S.C. § 548(a)(2) (1984). Golden Acres did not owe the Capanos $234,000. Rather, the Woodalls owed the Capanos $234,000. The Capanos accepted Golden Acres stock in lieu of the $234,000. The Woodall debt was then satisfied; it was not assumed by Golden Acres. The Capanos, as owners of Golden Acres, had a right to share in its profits but not a right to pillage its assets. The payment of $466,760.54 to pay off a debt that did not exist is obviously a conveyance without fair consideration.

■ Having determined that a violation of 31 U.S.C. § 3713(a) occurred, the Court must decide whether defendants Joseph and Mario Capano and J.L. Capano, Inc. should incur liability for that violation under 31 U.S.C. § 3713(b). As the Supreme Court noted of its antecedent, 31 U.S.C. § 192, the purpose of § 3713(b) "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." *King v. United States*, 379 U.S. 329, 337, 85 S.Ct. 427, 431, 13 L.Ed.2d 315 (1964) (Harlan, J.). We find these defendants were "representatives" of Golden Acres and are "liable to the extent of the payment for unpaid claims of the government." 31 U.S.C. § 3713(b). Joseph and Mario Capano were the sole officers and directors of Golden Acres and, through J.L. Capano, Inc., its sole owners. Mario Capano oversaw the corporate finances. Every single check Golden Acres cut had either Mario or Joseph Capano's signature or both (occasionally co-signed by their brother Frank J. Capano, Jr.). App. at 115–38, 151. In addition, the defendants knew about or were put on notice of the outstanding mortgage. App. at 23, 26–27, 28, 48–52, 70, 85, 147. See *King*, 379 U.S. at 339, 85 S.Ct. at 432 (requiring debtor's representative to have some knowledge or notice of debtor's obligation to the United States before liability imposed); *United States v. Spitzer*, 261 F.Supp. 754, 755 (S.D.N.Y.1966) ("As officers and directors of the corporation, defendants were in control of its affairs, and it must be assumed that, responsive to their duties, they had an awareness of all outstanding claims

litigation since "to import the limitation into the priority statute is totally unnecessary to its functioning, would serve to defeat its purpose, and would be inconsistent with the Supreme Court's mandate of liberal construction" for the priority statute. *Lakeshore Apartments*, 351 F.2d at 353 (citations omitted).

against the corporation). Imposition of liability on these defendants is clearly justified. *Lakeshore Apartments,* 351 F.2d at 353 (imposing liability on shareholder-managers); *Sullivan,* 214 F.Supp. at 703 (imposing liability on officer-director-shareholder); *Coyne,* 540 F.Supp. at 179 (same).

The defendants stridently argue that they should not be held liable because they did not originally own Golden Acres. Defendants' Answering Brief at 15. The argument is flawed. The issue is not when the Capanos took control of Golden Acres *per se* but whether they controlled Golden Acres when the corporation violated the Federal Priority Statute. Defendants further argue that they "had been advised by various attorneys that they had a right to repay themselves what they were owed for building the apartments and they never dreamed that [in] repaying themsleves [sic] what they were owed that [sic] they were doing anything wrong or hurting the government in any way." *Id.* at 8. The reach of the law, however, is not cabined by the poor advice of attorneys or the limited imagination of the defendants.

## V. PLAINTIFF'S MOTION TO STRIKE JURY DEMAND MADE BY DEFENDANTS.

■ Our grant of summary judgment above leaves only one substantive issue for trial: whether the corporate veil of Golden Acres should be pierced and Joseph and Mario Capano and J.L. Capano, Inc. be declared alter egos of Golden Acres, liable for its debts and breaches of the Regulatory Agreement. This issue must be tried as material facts are at issue.

Having determined that this question remains for trial, the Court can now address the United States' motion to strike the defendants' jury demand. The Seventh amendment preserves the right of trial by jury in "suits at common law." While the 1938 merger erased, in the federal courts, much of the former distinction between law

and equity, that distinction remains vital for determination of the right of trial by jury. Actions that sound in equity do not carry a right to trial by jury.

Piercing the corporate veil is an action that sounds in equity. *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (courts of equity pierce corporate fictions and disguises). Under the law of Delaware,[4] a state which staunchly maintains the division of law and equity, "piercing the corporate veil may be done only in the Court of Chancery, when the purpose of the action is to obtain a judgment against individual stockholders or officers." *Sonne v. Sacks,* 314 A.2d 194, 197 (Del.1973). Various state appellate courts, in deciding what standard of review to apply, have also noted that piercing the corporate veil sounds in equity. *McCain Foods, Inc. v. St. Pierre,* 463 A.2d 785, 787 (Me.1983); *Nebraska Eng. Co. v. Gerstner,* 212 Neb. 440, 323 N.W.2d 84, 86 (1982).

Accordingly, we grant the government's motion to strike the defendants' jury demand.

## VI. DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENT.

In their Reply Brief in Response to Plaintiff's Reply and Answering Brief, filed April 7, 1988, the defendants argue that this action is barred by the six year statute of limitations applicable to actions brought by the government and "founded upon any contract express or implied in law or fact." 28 U.S.C. § 2415(a). Accepting, *arguendo,* that this is the applicable statute of limitations, we reject the defendants' argument as a matter of procedure. We also find it lacking as an application of the law.

■ Procedurally, while the defendants raised the statute of limitations argument in their Answer filed July 8, 1985, this Court's Order dated November 23, 1987 mandated that: "3. All case dispositive

---

**4.** This citation of Delaware law should not be misconstrued as implying that Delaware law will necessarily control our ultimate determination of whether the corporate veil of Golden

Acres should be pierced; federal law may control that determination. *See United States v. Pisani,* 646 F.2d 83, 85–87 (3d Cir.1981).

motions accompanied by a brief and affidavit schedule shall be served and filed no later than February 19, 1988. Failure to timely file motions shall be considered a waiver of all such motions." Defendants filed a motion for summary judgment on February 9, 1988, without specifying grounds for that motion. At the latest, defendants should have raised this issue in the Opening Brief on their motion, submitted March 4, 1988. D.I. 72. Assertion of this issue in their Reply Brief eleven days before trial was untimely. Therefore, we deem the statute of limitations argument waived.

■ Were it to be considered on its merits, defendants' argument on the statute of limitations would also fail. Section 2415(a) is subject to the provisions of section 2416. 28 U.S.C. § 2415(a). Section 2416(c) tolls the running of the statute of limitations for the time during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with responsibility to act in the circumstances." 28 U.S.C. § 2416(c). While the first Golden Acres' check in violation of the Federal Priority Statute, for which the government seeks recovery, was issued on May 12, 1978 (App. at 93, 117), Golden Acres did not prepare an income and expense report for May, 1978, until March 22, 1979, and could not have submitted the report to HUD before that date.[5] Without this report, the government could not determine the applicability of the Priority Statute. The government initiated this suit on March 21, 1985, within the six year period provided for by § 2415.

VII. CONCLUSION.

This case will proceed to trial on the issue of piercing Golden Acres' corporate veil. At that time, we will also determine the interest to be assessed on the amount of $466,760.54 for which the defendants have been found liable due to their viola-

tion of the Priority Statute. The issue of a constructive trust of payments in violation of the Regulatory Agreement and/or the Priority Statute will also be considered at that time, if necessary.

---

5. The government presented uncontroverted documentation of this fact at the pretrial conference.