**LAW OFFICES OF JONATHAN STEIN, Plaintiff,**

v.

**CADLE CO., et al., Defendants.**

**No. CV 97–5551 SVW (JGX).**

United States District Court, C.D. California.

April 7, 1999.

Jonathan A. Stein, Santa Monica, pro se.

James W. Hodges, Marren J. Roy, Hinchy Witte Wod Anderson & Hodges, San Diego, CA, for Cadle Co.

Ronald J. Mandell, Moss Levitt & Mandell, Los Angeles, CA, for Harbro Inc.

Donald W. Schmidt, Donald W. Schmidt Law Offices, San Diego, CA, for Bruce Wilbanks.

Edward M. Robbins, Jr., Darwin Thomas, AUSA Office of US Atty., Los Angeles, CA, for U.S.

David E. Wulfsberg, David E. Wulfsberg Law offices, Long Beach, CA, for Fuerte Corp.

## ORDER DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND SETTING EVIDENTIARY HEARING

WILSON, District Judge.

### I. Introduction

This case began when Plaintiff filed his complaint in interpleader in Los Angeles Superior Court on June 26, 1997. The United States removed the action to this Court. The complaint seeks a declaration of the rights of the various claimants to the interpled funds, which stem from the May 1997 settlement in the *Indian Child* case.[1] While Plaintiff actually divided the fund into two parts, for present purposes, Plaintiff received all of the funds, slightly over $300,000, based on the claims of a corporation named Quicksilver in the *Indian Child* case.

The remaining claimants to the interpled fund consist of creditors of Quicksilver.[2] These claimants include Cadle Company, Quicksilver Manufacturing, Inc., Har–Bro, Inc., Bruce Wilbanks, the United States, and Randall Welty.[3] Most of these claimants are creditors of Quicksilver; some claim to have lien interests in the proceeds from the *Indian Child* case. The United States and Randall Welty claim an interest in the fund from the *Indian Child* case through their judgment lien notices filed in that case.

Briefly, the United States argues that it obtained a judgment against Quicksilver from a Court in this District in the amount of slightly over $370,000—the payment of which would exhaust the interpled fund. That judgment arose from Quicksilver's failure to pay a levy against the salary of its President, Lyle Byrum's, after Byrum's failure to pay taxes. The United States now moves for summary judgment based on its asserted priority under federal law against the claims of the other creditors.[4]

### II. Analysis

#### A. Summary Judgment Standard

The Court may grant summary judgment when the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to establish both the nonexistence of a genuine issue of fact and that it is entitled to judgment. *Id.* The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

---

1. *Indian Child Welfare Consortium v. Riverside County Flood Control and Water Conservation Dist.,* Case No. 242232, Riverside County Superior Court.

2. Plaintiff and Fuerte Corporation claimed that Fuerte obtained an assignment of Quicksilver's chose in action in the *Indian Child* case through a foreclosure. The California Court of Appeal rejected that contention. Accordingly, Plaintiff and Fuerte do not maintain claims against the fund.

3. The State of California, while mentioned in the complaint, has not answered.

4. The United States also claims to have some tax liens against Quicksilver but did not make those liens a part of the instant motion.

proof at trial." *Id.* at 323–24. The non-moving party cannot rest on the allegations and denials in the pleadings, but must set forth specific facts establishing an issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. The Federal Insolvency Statute

■ If an entity does not possess enough assets to pay all of its creditors, the creditors receive payment in order of priority. The common law contains the priority principle that " 'the first in time is the first in right.' " *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (quoting *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). The federal government has passed a number of laws which supercede the default rule that first in time is first in right. One example, which has existed in some form "for nearly all of our nation's history," *United States v. Golden Acres, Inc.,* 684 F.Supp. 96, 101 (D.Del.1988), the Federal Insolvency Statute, provides, in part, that

(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

. . .

(iii) an act of bankruptcy is committed

31 U.S.C. § 3713.

■ In other words, if an entity is (1) insolvent and (2) it commits an "act of bankruptcy" then the entity must pay the government's claim first.[5] The United States contends that it deserves the entire interpled fund based on its prior judgment against Quicksilver, for which the United States obtained a lien in the *Indian Child* action, because Quicksilver was insolvent and committed acts of bankruptcy. The United States argues that the declarations of Lyle Byrum, Quicksilver's former president, and Jonathan Stein, establish Quicksilver's insolvency in 1995. The United States then explains that either (1) assignments, to other creditors, of Quicksilver's chose of action in the *Indian Child* case or (2) Quicksilver's failure to discharge a lien within thirty days after a creditor obtained such a lien through legal proceedings while Quicksilver was insolvent amount to acts of bankruptcy.

■ The United States correctly describes the application of the Federal Insolvency Statute. If Quicksilver was insolvent at the time it committed an act of bankruptcy, then Quicksilver must pay the claim of the United States first, in this case by means of the interpled fund. Thus the Court must make two determinations: (1) was Quicksilver insolvent and (2) did it

---

**5.** The other claimants suggest that the United States does not have a sufficient interest in this action to receive any payment because the United States did not have a perfected lien in the *Indian Child* action. As an initial matter, although the parties did not discuss the issue, the Court notes that the Federal Insolvency Statute applies to a "claim" of the government. 31 U.S.C. § 3713. The definitions section of the statute defines "claim" or "debt" as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency. A claim includes, without limitation—... (G) other amounts of money or property owed to the Government." 31 U.S.C. § 3701(b)(1). While the courts have not meaningfully construed this provision, the Court observes that the statute does not ap-

pear to require the United States to obtain a lien for the United States to obtain a priority over other creditors. *But see United States v. Estate of Romani,* 523 U.S. 517, 118 S.Ct. 1478, 1484–85, 140 L.Ed.2d 710 (1998) (explaining that section 3713 does not create a lien and that priority is not the equivalent of a lien for the purpose of displacing a specific and perfected lien of another creditor).

Nevertheless, the Court finds that the United States did have a lien in the *Indian Child* case. The United States obtained a lien in that action by filing a notice of lien and a copy of the federal judgment in the action itself. Under California Code of Civil Procedure section 708.410, this allowed the United States to "obtain a lien ... to the extent required to satisfy the judgment creditor's money judgment. . . ." *See Fleet Credit Corp. v. TML Bus. Sales, Inc.,* 65 F.3d 119, 121 (9th Cir.1995).

commit an act of bankruptcy? Because "the purpose of § 3713 is to 'secure adequate revenue to satisfy burdens on the federal treasury, the provision is given a liberal interpretation in order to effectuate its purpose.'" *Federal Trade Comm'n v. Crittenden,* 823 F.Supp. 705, 707 (C.D.Cal. 1993) (quoting *United States v. Cole,* 733 F.2d 651, 654 (9th Cir.1984)).

*Insolvency*

▉ For purposes of the Federal Insolvency Statute, a debtor falls into insolvency when its liabilities exceed its assets. *See Lakeshore Apartments, Inc. v. United States,* 351 F.2d 349, 353 (9th Cir.1965); *Golden Acres,* 684 F.Supp. at 101; *United States v. Dyna–Tex, Inc.,* 372 F.Supp. 280, 281 (E.D.Tenn.1973). The Court cannot conclude that Quicksilver was insolvent at the relevant time because the other claimants have raised a factual dispute. The United States claims that Quicksilver had ceased operating and had significant liability versus very few assets. The United States offers the declaration of Lyle Byrum, Quicksilver's former president, which reports Quicksilver's insolvency. The other claimants counter that Byrum's declaration suffers from bias because he benefits if Quicksilver pays the government. The other claimants also argue that Quicksilver had an revenue stream at the relevant time and that Quicksilver also owns a valuable license to build a certain kind of ultra-light aircraft. The Court cannot conclude, for the purpose of summary judgment, that Quicksilver was insolvent at the relevant time. Accordingly, the Court will conduct an evidentiary hearing on this issue.

*Act of Bankruptcy*[6]

▉ The Ninth Circuit has explained that an " 'act of bankruptcy' is general and

for the sole purpose of describing one of the three ways in which a debtor's insolvency may be manifested." *United States v. Whitney,* 654 F.2d 607, 610 (9th Cir. 1981). The term "act of bankruptcy" in the Federal Insolvency Statute refers to the definition contained in the now superceded Bankruptcy Act of 1898 (formerly 11 U.S.C. § 21(a)). *See Jonathan's Landing, Inc. v. Townsend,* 960 F.2d 1538, 1543 (11th Cir.1992); *Golden Acres,* 684 F.Supp. at 101. That Act included, as part of its definition of bankruptcy, having "suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property." 11 U.S.C. § 21(a)(3) (1976) (repealed 1978). Courts have considered debtors' failures to discharge such liens acts of bankruptcy under the Federal Insolvency Statute. *See Jonathan's Landing,* 960 F.2d at 1542–45 (outlining the principle but rejecting the application of the Federal Insolvency Statute after reasoning that the failure to discharge the lien that created the insolvency could not constitute an act of bankruptcy during insolvency); *Dyna–Tex, Inc.,* 372 F.Supp. at 281 (utilizing statutory definition for "act of bankruptcy" under the Federal Insolvency Statute); *Ideco Division of Dresser Industries v. Chance Drilling Co.,* 309 F.Supp. 305, 307 (S.D.Tex.1968), *aff'd* 422 F.2d 165 (5th Cir.1970).

▉ The other claimants suggest that the Court cannot apply the Federal Insolvency Statute, but instead should look to the Federal Tax Lien Act, 26 U.S.C. § 6323, to determine the issue of priority.[7]

---

**6.** The Court will only address Quicksilver's failure to discharge a lien because it finds that clearly amounts to an "act of bankruptcy" for the reasons discussed below.

**7.** Claimants care about this distinction because, as the government aptly put it, "if

§ 6323 applies, certain interests of third parties may be granted priority over a federal tax lien, *even though* the federal insolvency statute would otherwise apply." Motion by United States for Summary Judgment at 12.

The claimants suggest that the Supreme Court decided that the specific provisions of the Tax Lien Act trump the more general requirements of the Insolvency Statute when both provisions would otherwise apply. *See United States v. Estate of Romani,* 523 U.S. 517, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998). The Court agrees that the provisions of the Tax Lien Act would trump the Insolvency Statute if the Tax Lien Act applied. Nevertheless, the Court concludes that the Tax Lien Act does not apply to this case. The Tax Lien Act provides that if a person fails to pay his or her taxes after a demand then the amount becomes a lien in favor of the government. 26 U.S.C. § 6321. In this case, the United States does not rely on a tax lien, or the failure to pay taxes owed by Quicksilver.[8] Instead, the United States obtained a judgment against Quicksilver for Quicksilver's failure to pay a levy against the wages of Lyle Byrum, Quicksilver's president.[9] Thus the judgment does not amount to a tax lien, because it does not rely on taxes owed by Quicksilver. Accordingly, the Court finds that the Federal Insolvency Statute applies to this action.[10]

The judiciary has crafted an exception to the application of section 3713: "the USA's liens cannot trump another party's liens where that party has gained possession or title to the debtor's property." *Straus v. United States,* 1998 WL 748344 at *4 (N.D.Ill.). *See also United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); *United States v. Gilbert Assocs.,* 345 U.S. 361, 365–66, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). With respect to personal property, the competing creditor must have reduced the interest to title or possession. *Estate of Romani,* 118 S.Ct. at 1486.

The claimants obliquely suggest that this exception should apply to their claims to the funds from the *Indian Child* settlement.[11] However, no claimant can demonstrate an actual possession of the property.[12] In fact, only Claimant Welty filed a notice of lien in the *Indian Child* action itself, and Welty did so after the United States filed its own notice of lien. The Court does not dispute that the other claimants had a spectrum of claims against Quicksilver; nevertheless, no claimant had achieved actual possession of Quicksilver's chose of action.[13]

8. The United States does claim to have tax liens against Quicksilver but did not offer them as a basis for summary judgment at this time.

9. Quicksilver's failure to pay the levy made Quicksilver personally liable for the amount. 26 U.S.C. § 6332(d).

10. The Court recognizes the appeal of claimant Welty's argument that *Estate of Romani* could apply more broadly. *Estate of Romani* did discuss the "strong policy objections to the enforcement of secret liens" and stated that "given our unambiguous determination that the federal interest in the collection of taxes is paramount to its interest in enforcing other claims ... it would be anomalous to conclude that Congress intended the priority statute to impose greater burdens on the citizen than those specifically crafted for tax collection purposes." 118 S.Ct. at 1487 (citation omitted). However, *Estate of Romani* reached its discussion of policy after finding that a later, more specific and comprehensive statute conflicted with the Federal Insolvency Statute. The Court did not purport to graft new, universal limitations on the Federal Insolvency Statute. Because this Court does not find that the Tax Lien Act applies, the Court does not find a statutory conflict and cannot extend the rationale of *Estate of Romani* beyond what the Supreme Court explicitly intended.

11. "The burden to prove exemption from this statute lies upon those who claim exemption to show that the statute does not apply." *Crittenden,* 823 F.Supp. at 707 (citing *United States v. Whitney,* 654 F.2d 607, 609 (9th Cir.1981)).

12. The United States points out, and claimant Welty agrees, that Quicksilver's proposed assignment of its chose of action is void under the law of California.

13. Claimant Quicksilver Manufacturing, Inc. ("QMI"), a different entity from Quicksilver, the Plaintiff in the *Indian Child* action, offers the strongest argument in this vein. QMI claims that it obtained a security interest in some of Quicksilver's personal property which was destroyed by the flood that started

Thus the Court finds that the Federal Insolvency statute applies in this case and that Quicksilver committed an act of bankruptcy for purposes of the statute. However, the Court cannot conclude that Quicksilver was insolvent at the time the act of bankruptcy occurred. Accordingly, the Court DENIES the motion of the United States for summary judgment.[14] The Court will conduct a hearing on Tuesday, April 27, 1999, at 9:00 a.m. on the matter of insolvency. At that time the United States and other claimants can present evidence on Quicksilver's financial situation at the time of the act of bankruptcy.

IT IS SO ORDERED.

---

the *Indian Child* case. QMI argues that because it had an interest in the property for which the settlement attempted to provide compensation, QMI's interest precedes that of the government. The United States responds, and QMI concedes, that QMI only obtained title through a 1998 foreclosure sale—long after the lien of the United States had attached. QMI also does not suggest how its claim, even if prior to the United States, meets the "title or possession" test outlined above. Accordingly, the Federal Insolvency Statute requires that the United States receive payment before QMI.

**14.** The United States and Jonathan Stein, the attorney who filed this interpleader action, disagree about whether or to what extent Mr. Stein should receive fees from the fund for his work in connection with this matter. While the United States argues that the Federal Insolvency Statute and the facts of this case make any fee award inappropriate, Mr. Stein argues that the Court should not decide this matter on the current state of the record. The Court agrees. Accordingly, the Court will invite further briefing on the issue of Mr. Stein's fees after the resolution of the United States' claim against the other claimants.