**KENT FARM COMPANY, Plaintiff,**

v.

**Carla HILLS et al., Defendants.**

**Civ. A. No. 76–1157.**

United States District Court,
District of Columbia.

July 8, 1976.

---

Philip A. Lacovara, Peter M. Kreindler, Washington, D. C., for plaintiff.

Mary Ann Clifford, Atty., Department of Justice, Washington, D. C., for defendants.

## PRELIMINARY INJUNCTION

GESELL, District Judge.

Upon consideration of plaintiff's motion for a preliminary injunction, after full hearing, and for the reasons set forth in the accompanying Memorandum constituting the Court's findings of fact and conclusions of law filed herewith, it is hereby

ORDERED that defendants, their agents, officers, servants, employees, attorneys and all persons in active concert or participation with them are restrained until further Order of the Court from taking any action to institute foreclosure proceedings with respect to, or to proceed further to foreclosure upon, the mortgage of Kent Farm Village; and it is further

ORDERED that defendants, after reconsideration of the situation, may move the Court to vacate or modify the preliminary injunction, provided that they first file with the Court and serve on plaintiff a written statement of their reasons for initiating new foreclosure proceedings that complies with the standards set in the accompanying Memorandum. Further proceedings, if deemed necessary by the Court, will be scheduled at that time. All discovery in this case is stayed until further Order of the Court.

## MEMORANDUM

Kent Farm Village is a federally assisted, multifamily, low and moderate income housing project. This is an action to enjoin mortgage foreclosure proceedings and consequent sale of the project at public auction by the Department of Housing and Urban Development (HUD), which holds the mortgage that is seriously in arrears. Plaintiff contends that foreclosure (a) violates the Secretary's declared moratorium on foreclosures, (b) contravenes the national housing policy and HUD policies and guidelines, (c) is based upon certain erroneous factual premises, and (d) is attributable to the personal animus of certain HUD officials and employees. Accordingly it asserts the rationale of the contemplated foreclosure remains unexplained, is based on an arbitrary and capricious abuse of discretion and consequently violates the Administrative Procedure Act.

HUD contends that it has discretion to foreclose, that it has not abused that discretion, and that it should be allowed to proceed in order that it may properly fund and administer its insurance programs and carry out its obligations to oversee housing projects of this type consistent with national housing policy in the public interest.

The Court has jurisdiction, among other things, under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 to review this final agency action.

### Statement of Background Facts

Plaintiff, Kent Farm Company, is a limited partnership organized under the laws of Massachusetts and is the owner of Kent Farm Village. This project was built with the aid of a mortgage loan of approximately $5,000,000, that was insured under Section 221 of the National Housing Act, 12 U.S.C. § 1715l. As the statute declares, Section 221 is intended "to assist private industry in providing housing for low and moderate income families and displaced families," 12 U.S.C. § 1715l(a). In return for a HUD-insured mortgage loan at a below-market interest rate, the owner-mortgagor must enter into a Regulatory Agreement with HUD that provides that units within the housing project may be leased only to families meeting the income limitations established by HUD and only at rents approved by HUD. The owner's annual dividends are restricted to six percent of the owner's equity investment, and rents

are calculated and approved so that project income will be sufficient at "full occupancy" (95 percent of capacity) to pay operating expenses, amortize the mortgage, fund a replacement reserve, and yield a six per cent dividend to the investors. Kent Farm Village consists of 250 units with a current occupancy rate that ranges from 95 percent to 97 percent, with vacancies due to the normal turnover of tenants.

Plaintiff, in financial difficulty from the start, defaulted on the mortgage in September, 1973. When Kent Farm Village was completed in 1971, the project "income analysis and appraisal" prepared by HUD had budgeted real property taxes at $69,000, and HUD fixed initial rents on that basis. Taxes have been assessed by the City of East Providence at approximately $134,000 annually for the years 1972 through 1976, nearly twice the amount originally predicted. These additional taxes and related legal expenses are the principal reasons for the default.

The Federal National Mortgage Association, then the mortgagee of Kent Farm Village, exercised its option under the mortgage insurance contract to assign the mortgage to HUD and collect the mortgage insurance, and on June 26, 1974, HUD became the mortgagee.

The Providence office of HUD, which has jurisdiction over Kent Farm Village, recommended immediate foreclosure. This was delayed pending a financial audit of the project. Plaintiff challenged the increased tax assessments imposed locally and submitted a proposed Reinstatement Plan. HUD eventually rejected the Plan. Foreclosure was further delayed when plaintiff sought reconsideration and amended the Plan. The Amended Plan was rejected in March, 1976, with an indication that foreclosure would go forward unless plaintiff within ten days remitted $341,000, an amount allegedly representing all the tax deficiency and one-half the interest deficiency. Further delay occurred while an accounting error was adjusted reducing the $341,000 to $255,709. Ultimately it was determined that the limited partners were

unwilling to put up the funds due to various uncertainties. During this period a total of approximately 20 meetings occurred between plaintiff and HUD to explore methods of reinstating the mortgage.

This series of events culminated in a decision by HUD at the highest level in Washington during the first week of June, 1976, to institute formal foreclosure proceedings. On June 28, 1976, HUD gave the first of three weekly notices necessary for the contemplated foreclosure sale at public auction presently scheduled for July 19. As of July 1, 1976, Kent Farm Company had failed to make $791,277.16 in payments due under the promissory note, mortgage and regulatory agreement.

On June 25 plaintiff instituted this suit and filed an application for a temporary restraining order which was denied by the Court on the same day. Plaintiff then moved for a preliminary injunction, a hearing was promptly held, and the matter is now before the Court for decision.

Against this background of undisputed facts the Court, upon a careful review of the briefs and arguments of counsel and after considering the affidavits, documents and the testimony, finds and concludes as follows:

### A. The Decision to Foreclose

The Kent Farm project essentially is providing decent, safe and sanitary living quarters for low and moderate income families consistent with the intent and purpose of the National Housing Act.

The project is not financially viable, but is in serious and ever-increasing default and there is no reasonable prospect that the limited partners will contribute additional funds out of their own pockets or achieve a reinstatement of the mortgage satisfactory to HUD. While increased taxes and legal fees are major factors, it does not appear from the record what other management and expense factors, if any, are responsible for its steadily increasing default.

There is a HUD moratorium still in effect which establishes a policy dealing with contemplated foreclosure of certain types of

HUD-held mortgages. Although the moratorium was never formally promulgated or published, it is clear that HUD has repeatedly emphasized the policy and adhered to its terms, that the moratorium presently continues in operation and that it is applicable to plaintiff's mortgage. The moratorium, as formulated in a contemporaneous telegram to all HUD regional administrators, reads as follows:

> Secretary Lynn announced 1/14/75 an immediate moratorium on the filing of any new foreclosures on any subsidized projects with HUD-held mortgages. This moratorium will be in effect until around the first of March or until further notice. The moratorium does not apply to unsubsidized projects or to single family mortgages. The moratorium does not cover subsidized projects where the situation is hopeless, as evidenced by abandonment, incomplete construction, regulatory agreement improprieties and similar conditions. The moratorium should have no immediate effect on the work done in the area/insuring offices. The decision as to whether or not to proceed with foreclosure will be made in the central office. Area/insuring offices will continue to make recommendations on specific projects, as in the past. The area/insuring offices should continue to provide an analysis of the physical and financial condition as well as a statement of the quality of management performance on any project sent forward for foreclosure.

This policy's exception for hopeless projects has never been precisely defined. There have been 116 foreclosures of HUD-held mortgages since the policy was instituted, while several hundred remain in various stages of default.

 HUD is required to apply this policy in a reasoned, nonarbitrary manner that is consistent with the underlying congressional intent. *See, e. g., Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Cole v. Lynn*, 389 F.Supp. 99 (D.D.C.1975). In this instance, HUD has failed to present any "reasoned analysis" of its decision to invoke the exception to the general moratorium. Of course, the Court may not second-guess the agency but it is entitled to have presented a rational statement of the factors motivating the decision. There is admittedly no such statement here. Rather, a very confused, sometimes inaccurate and contradictory series of explanations emerges from the testimony and operative documents.

Moreover, HUD has been unable to demonstrate on the present record that national housing policy will be furthered as well or better by foreclosure than by continuing the project in the hands of plaintiff. As best the Court has been able to determine from the present record, HUD acted because it knew the mortgage was in default and no acceptable plan had been presented which gave any assurance that the financial instability of the project could be redeemed.* Its belated effort to show poor and inefficient management as an added justification was not convincing and is not accepted.

 While the project undoubtedly lacks financial promise, this alone is not enough to justify foreclosure. In exercising its admitted discretion, HUD must show more than a legal right to foreclose. HUD is not simply a banker. Before it acts because of default on a project clearly otherwise meeting housing objectives it must consider national housing policy and decide what further steps authorized by Congress it will take to assure continuity of the decent, safe, sanitary, low-cost housing then being provided. This it has apparently failed to do. There is, for example, no plan for operating and managing the property after foreclosure, no allegation of Section 8 funds to it, no arrangement with local pub-

---

* Plaintiff contends that the agency's decision was prompted by the personal animus of certain HUD personnel. However, the weight of the proof presently before the Court is to the contrary.

lic housing authorities. The present situation cannot be measured against congressional policy except in relation to the available alternatives. Particularly in light of the fact that foreclosure will result in an immediate governmental loss of $3,750,000, the Court cannot conclude on this record that the agency has rationally determined a course consistent with its statutory obligations.

■ The Court recognizes that HUD has authority to foreclose the project under section 207(k) of the National Housing Act, 12 U.S.C. § 1713(k), see also 12 U.S.C. § 1715l (g)(2), and that its decision is largely committed to its discretion by those enactments tempered by the narrowing of such discretionary power under HUD's self-imposed moratorium. Nonetheless, that discretion is not absolute and certainly it may not be exercised in a fashion that ignores HUD's overall responsibilities under various congressional enactments to further national housing policy.

■ Time and time again the judges of this Court and the United States Court of Appeals for this Circuit have emphasized that significant final agency action should be documented by a record, preferably contemporaneous, of factors taken into account in a rational way by the decision maker. As stated in *Environmental Defense Fund, Inc. v. Ruckelshaus*, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971):

> To protect these interests from administrative arbitrariness, it is necessary, but not sufficient, to insist on strict judicial scrutiny of administrative action. For judicial review alone can correct only the most egregious abuses. Judicial review must operate to ensure that the administrative process itself will confine and control the exercise of discretion. Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible. Rules and regulations should be freely formulated by administrators, and revised when necessary. Discretionary decisions should more often be supported with findings of fact and reasoned opinions. When administrators provide a framework for principled decision-making, the result will be to diminish the importance of judicial review by enhancing the integrity of the administrative process, and to improve the quality of judicial review in those cases where judicial review is sought.

(Footnotes omitted.)

Here, as in the past, HUD has again failed to observe minimum requirements in this respect. Admittedly, HUD confronts a monumental task. It receives vast sums of money and operates a variety of programs affecting fundamental aspects of the lives of many people, and its various units and divisions are necessarily assigned different aspects of the agency's total responsibilities. But whatever the difficulties, this process must always be coordinated to achieve the ultimate goals set by Congress, and the larger aspects of HUD's mission must not be lost in a maze of individual bureaucratic decisions by those having only limited responsibility and concerns. So long as the agency proceeds piecemeal by individual actions that cannot be fitted into a coherent program addressed to the agency's larger responsibilities, it may expect increasing difficulty in the courts, which have a constitutional responsibility to see that federal statutes are administered in a manner consistent with congressional directives.

Accordingly, after balancing the relative hardships between the parties and considering the public interest, and it appearing that plaintiff has established a reasonable probability of success on the merits and would as a result of the agency's action suffer irreparable injury for which there is no adequate remedy at law, the Court in the exercise of its equitable discretion shall preliminarily enjoin the immediate foreclosure on Kent Farm Village because of HUD's failure to consider the relevant factors and provide a rational, consistent statement of its reasons.

B. *The Negotiations for Reinstatement*

Plaintiff presses beyond this. It appears to have in mind an order that, in effect,

requires HUD to work out some kind of plan through capitalization of arrearages, use of Section 8 funds and other devices which will maintain the present owners in place. Certainly this is not a proper matter to resolve on preliminary injunction. Since, however, the issue is a major thrust of the litigation and its resolution will affect the nature and duration of the preliminary injunction to be granted, further discussion is needed.

The Secretary's authority to enter workout agreements or modifications of the mortgage terms is contained in Section 239 of the National Housing Act, 12 U.S.C. § 1715z–4. The final source of authority for entering such modification agreements is 42 U.S.C. § 3535(i)(5). No standards for approval of such agreements are contained in that section. Section 239 restricts the Secretary's discretion to approve these agreements only to the extent that any surplus income derived from the project must be held in trust for the Secretary. HUD regulations incorporate this restriction, 24 C.F.R. 207.256b, which is applicable to the Section 221 insured mortgages, *see* 24 C.F.R. 221.751.

The HUD–Held Project Servicing Handbook, RHM 4360.1 Supp. 1, September 1970, is entirely consistent with this broad delegation of discretion for approving workout arrangements. Once the mortgagor is in a position to resume full amortization of the mortgage, a "permanent workout arrangement" may be approved in which terms of the mortgage are changed to provide for liquidation of the full mortgage obligation during the term of the original mortgage.

■ These statutes and regulations clearly create limited circumstances under which workout arrangements are possible. But within that range, the discretion of the Secretary to approve a plan is, as a practical matter, absolute. Plaintiff has no right to such an agreement under the statute or regulations. *United States v. Woodland Terrace, Inc.*, 293 F.2d 505 (4th Cir.), *cert. denied*, 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961). A review of the long and arduous negotiations between the parties demonstrates that HUD was tolerant, forebearing and endlessly patient. It has not been shown to have been arbitrary, only insistent in protecting the Government's interests. It has certainly, on this record, exhausted alternatives. *Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill.1975).

Thus, there is no apparent likelihood of success on this issue, nor will the public interest be served by requiring further efforts to reach an accommodation. A preliminary injunction of limited duration is therefore needed only to assure compliance with the issues set out in section A, above.